# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

_____

|  |  |  |
|---|---|---|
| **MICHELLE ANN SHIPWAY,** | ) | **Case No. 5:11cv00112** |
|  | ) |  |
| *Plaintiff,* | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | **REPORT AND** |
|  | ) | **RECOMMENDATION** |
| **CHLOE JERLINSKI,** *et als.,* | ) |  |
|  | ) |  |
| *Defendants.* | ) | **By: Hon. James G. Welsh** |
|  | ) | **U.S. States Magistrate Judge** |

_____

 This consolidated cause of action arises primarily as the result of the emergency removal

of the plaintiff's infant grandson on October 27, 2010 by a child-protective services worker

and/or law-enforcement officers under authority of § 63.2-1517, Va. Code Ann. (1950, as

amended). (*See* docket # 12, exhibits 6 through 8). Alleging that both the emergency removal

and the Emergency Removal Order (docket #12, ex. 7), entered later the same day by the

Rockingham County (Virginia) Juvenile & Domestic Relations District Court ("J&DR Court"),

were based on "false statements" and violations of her "civil rights," Michelle Ann Shipway

("the plaintiff" appearing *pro se*) names Chloe Jerlinski, the Harrisonburg/Rockingham County

Department of Social Services ("HRCDSS"), Christy Savanick, Kate Bowman, Inv. Greg

Bowman, Sgt. Roger Knott, the Harrisonburg Police Department ("HPD"), and "John Doe" as

defendants in one or more of the multiple civil claims filed in this court. [1]  Seeking both

---

[1]  For all references herein, the plaintiff's complaint is deemed to include both her five original complaints filed on
October 26, 2011, her "Amended" complaint filed five days later in 5:11cv00112 and 5:11cv00113, and her "2nd
Amended Complaint" filed on February 2, 2012 (docket # 24).

$10,000,000.00 in money damages and injunctive relief, the plaintiff asserts her claims under 42 U.S.C. § 1983.

Citing *Younger v. Harris*. 401 U.S. 37 (1971), and its progeny, the defendants have jointly moved the court "to abstain from hearing the [plaintiff's] claims for injunctive relief" pending a final resolution of the ongoing state court proceedings concerning the placement of her minor son and the state removal and placement of her minor grandchild. On separate bases, the HRCDSS, the HPD, the social service caseworkers, and the police officers have also moved to dismiss the plaintiff's claim on various Rule 12(b) grounds.

Asserting the court's lack of subject matter jurisdiction, the fact that it is not a legal entity under Virginia law and its "entitle[ment] to sovereign immunity" from the plaintiff's claim for money damages, pursuant to Rules 12(b)(6) and 12(b)(1) the HRCDSS has moved for its dismissal (docket # 13 and 14). Asserting that it too is not a legal entity under Virginia law, pursuant to Rule 12(b)(6), of the Harrisonburg Police Department has moved for its dismissal (docket # 15 and 16). Pursuant to Rule 12(b)(6), Chloe Jerlinski ("Jerlinski") asserts that neither the plaintiff's Fourth nor her Fourteenth Amendment claims is based on either a cognizable liberty or privacy interest, and she further pleads that she has absolute immunity for actions taken in connection with her decision (as a social services department employee) to file the contested removal petition (docket # 17 and 18). Pleading the plaintiff's failure to state a cognizable cause of action as to any individual social services caseworker, pursuant to Rule 12(b)(6) Christy Savanick ("Savanick"), Kate Bowman ("Bowman") and Chloe Jerlinski ("Jerlinski") have jointly and severally moved to be dismissed (docket # 19 and 20). Asserting their absolute immunity on

2

the basis of § 63.1-1517, Va. Code. Ann (1950, as amended) and the plaintiff's failure to state a cognizable cause of action at to any of them, Inv. Greg Miller ("Miller"), Sgt. Roger Knott ("Knott") and John Doe (an unnamed child protective service worker) ("Doe") have jointly and severally also moved for their dismissal pursuant to Rule 12(b)(6) (docket # 21 and 22). In compliance with W.D. Va Local Rule 11(c) each of these motions was accompanied by a written brief.

Following the clerk's issuance of a Notice (docket # 23) pursuant to *Roseboro v. Garrison*, 528 F.2[d] 309 (4th Cir. 1975), the plaintiff filed her response. Identified as her "2nd Amended Complaint" (docket # 24), the plaintiff therein asks the court "[t]o review the propriety" of actions taken as part of a state child abuse investigation, and she "asserts . . . claims" against the various defendants for violations of her "civil rights" (docket # 24).

Describing her response as "rambling," "incoherent," and containing "immaterial and impertinent matters," in their joint reply (docket # 27) the defendants argue that the plaintiff failed to address any of the issues raised in their several Rule 12(b) motions and that it should be stricken on the grounds that it was filed in violation of Rule 15(a)(2), and was filed without signature in violation of Rule 11(a).

By order entered on November 2, 2011 (docket # 5) the plaintiff's five claims have been consolidated. And by a separate order of referral entered on February 10, 2012 (docket # 30) this case is now before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommended disposition all pretrial motions.

Pursuant to a previously scheduled status conference, on February 23, 2012 the plaintiff appeared in her own proper person and the defendants by their counsel of record. The proceeding was electronically recorded, transcribed and filed with the court on March 21, 2012 (docket # 38). During the status conference the plaintiff specified to the court three separate claims she was asserting in this case (docket # 38, pp. 7-13, 62-63). First, she contends that her Fourth Amendment right of privacy was violated when her grandson was removed from her physical care on October 26, 2011 by the two police officers on the basis of information received from Doe (docket # 38, pp. 3-4, 7- 9, 13). Second, she contends that she was the victim of defamatory testimony given by Bowman and Savanick to the effect that her grandson had been abused and neglected while in her care (docket # 38, pp. 8-9, 13). Third, she contends that her due process rights were violated by Jerlinski's actions in preventing her from attending or participating in the J&DR Court's emergency removal hearing on October 27, 2011 (docket # 38, pp. 10-11, 13). She further represented that as to each of these claims she was seeking monetary damages and the "return of [her] grandson to his mom" (docket # 38, pp. 13-14).

## A. Objection to 2nd Amended Complaint

The policy of Rule 15(a) is to permit liberal amendment to facilitate the resolution of claims on their merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 651 (4th Cir. 2007). Accordingly, in the absence of any showing of prejudice to the defendants, or some undue delay, or some evidence of bad faith on the part of the plaintiff, as announced orally from the bench, the defendants' objection to the court's consideration of the plaintiff's 2nd Amended Complaint is

overruled, and it is deemed timely and appropriately filed. To this action of the court, the defendants' objection and exception was noted for the record.

## B. Motion for Abstention and Stay

Based on the abstention principles announced by the Supreme Court in *Younger v. Harris*, 401 U.S. 3740-50 (1971), and its progeny, the defendants argue that this court should abstain from hearing the plaintiff's claims for injunctive relief given the important state interests in the ongoing J&DR Court proceedings involving the custody, visitation, and placement of minor children.

"[A]lthough initially conceived in the context of preventing federal court intervention into pending state court criminal proceedings," the *Younger* abstention doctrine has been since "extended by the Supreme Court and broadly applied to prevent, subject to narrow exceptions, federal court intervention into state civil and administrative proceedings." *Hennis v. Hemlick*, 666 F.3ᵈ 270, 274 (4ᵗʰ Cir. 2012) (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) (applying *Younger* principles to civil proceedings); *Ohio Civil Rights Comm. v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986) (*Younger* applied to state administrative proceedings)); *accord Middlesex County Ethics Committee v. Garden Barr Assn.*, 457 U.S. 423, 426 (1982). Holding that the abstention principles underlying Y*ounger* also apply in non-criminal judicial proceedings where important state interests are involved.

"Sensitive, [therefore], to principles of equity, comity, and federalism, *Younger* mandates

5

'abstention not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government'" *Beam v. Tatem*, 299 Fed. Appx. 243, 246 (4th Cir. 2008) (quoting *Pennzoil Co. v. Texaco, Inc*., 481 U.S. 1, 11 (1987). Additionally *Younger* also "recognizes that state courts are fully competent to decide issues of federal law and has as a corollary the idea that all state and federal claims should be presented to the state courts." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 251 (4th Cir. 1993) (internal citation omitted).

Thus, *Younger's* abstention principles direct this court to abstain from interfering in state proceedings, even if there is subject matter jurisdiction, when the following three factors are present: (1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; (2) the ongoing state proceeding implicates important, substantial, or vital state interests; and (3) the stated proceeding provides adequate opportunity to raise constitutional challenges. *Nivens v. Gilchrist*, 444 F.3d 237, 241 (4th Cir. 2006); *see Middlesex County Ethics Committee*, 457 U.S. at 432.

Counsel for the defendants has filed, and made a part of the record, a number of state court records documenting certain ongoing proceedings since at least April 23, 2010 pertaining to matters related to the actions of the HRCSSD involving either the custody and foster care of the plaintiff's minor son or to this agency's similar activities involving the plaintiff's minor

daughter's infant son (Docket # 12, exhibits 1-11). [2]   As the defendants argue, these records

relate to the plaintiff's prayer for injunctive relief.  They document the J&DR Court's ongoing

proceedings pertaining to the plaintiff's minor son, including an April 23, 2010 finding that the

plaintiff's minor son was a child in need of services and the award of his custody to the

HRCSSD (ex. 1); the July 9, 2010 reaffirmation of HRCSSD custody (ex. 2); the plaintiff's

appeal of these custody decisions and their subsequent affirmance by the circuit court (Virginia)

by order entered on November 10, 2011 (ex. 3); the J&DR Court's order giving interim approval

to the HRCSSD's petition for permanency planning pursuant to § 16.1-282 , Va. Code Ann

(1950, as amended) and the scheduling of the matter for a six-month review for April 27, 2012

(ex. 4).  Similarly, exhibits 5 through 11 document the ongoing proceedings pertaining to the

plaintiff's grandson.  Beginning with the J&DR Court's December 29, 2008 action on an

attached guardian *ad litem* petition, the state court records document the finding, based on

"undisputed facts," that the plaintiff's infant grandson was a child in need of services and

justified his emergency removal (ex. 5).  *Inter alia*, this exhibit notes the plaintiff's extensive

history of drug abuse, the fact of her underage daughter became pregnant while in the plaintiff's

custody, and the plaintiff's lack of fitness to have custody of her daughter.  Subsequent J&DR

Court records show that on October 27, 2010 Savanick (a Child Protective Services social

worker) filed an HRCSSD petition with supporting affidavit requesting child's custody and other

emergency relief (ex. 6); the entry of an emergency removal and temporary custody order later

the same day (ex. 7); the entry of a preliminary removal and protective following a hearing on

---

[2]   Where a document is referenced in the plaintiff's complaint and is central to the plaintiff's claims, it may be considered in deciding a motion to dismiss.  *See Hecker v. Deere & Co*., 556 F.3[d] 575, 582 (7th Cir. 2009). Likewise, matters within the public record may also be considered.  *Doss v. Clearwater Title Co*., 551 F.3[d] 634, 640 (7th Cir. 2008); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3[d] 1074, 1080 (7th Cir. 1997).  Consistent with these exceptions to the consideration of outside documents as part of a motion to dismiss, the court may appropriately consider the court records submitted along with their motion.  *LeClercq v. Lockformer Co*., 2002 U.S. Dist. LEXIS 19465, *8-9 (N.D. Ill. Oct. 9, 2002) (court records may be considered in deciding a Rule 12(b)(6) motion to dismiss); *Michau v. Warden*, 2011 U.S. Dist. LEXIS 120565, *9 n.3 (D.S.C. Sept. 14, 2011).

November 1, 2010 on the basis of a finding that the removed child was subject to imminent threat, awarding temporary legal custody to HRCSSD and, among other things, ordering the plaintiff to have no unauthorized contact with the removed child (ex. 8); the J&DR Court's entry of an agreed CHINS [3] dispositional order on November 29, 2010 noting the transfer of legal custody of the removed child to HRCSSD and continuing the prohibition of unauthorized contact by the plaintiff (ex. 9); the protective order entered on October 31, 2011 at the HRCSSD request prohibiting the removed child's mother from any unauthorized contact (ex. 11); and the Permanency Planning Order entered the same day providing for a second permanency placement hearing on February 29, 2012 (ex. 10).

Without serious question, by these documents the defendants have established the existence of ongoing state proceedings [4] that are judicial in nature and satisfy the first prerequisite of *Younger* abstention. Second, these state court records also establish that the proceedings involve child dependency and neglect and, by their very nature, implicate important state interests. *Pethel v. State Dep't of Children Servs*., 2011 U.S. Dist. LEXIS 132711,*17 (E.D. Tenn. Nov. 16, 2011) ("state juvenile court proceedings concerning custody and dependency issues implicate important state interests relating to matters of domestic relations and the welfare of children in state custody"). In accordance with the obligation of federal courts to expect state courts to be able to protect the interests of a federal plaintiff, *Younger's* third abstention prerequisite is presumptively satisfied and it strongly indicates that the plaintiff's claims asserted in this court can be raised appropriately and presented in the state J&DR Court

---

[3] CHINS is an acronym for Child In Need of Services

[4] During oral argument on the various Rule 12(b) motions, the plaintiff agreed that the state court proceedings are ongoing. (Docket # 38, pp. 19-20).

Case 5:11-cv-00112-MFU-JGW   Document 39   Filed 04/13/12   Page 8 of 21   Pageid#: 308

proceedings. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 6 (1987) (*Younger* abstention is appropriate where the plaintiff has failed to meet its burden to prove the inadequacy of the Texas state courts).

Therefore, absent a showing by the plaintiff of state court inadequacy, the Y*ounger* abstention doctrine mandates application the strong federal policy against interference by this court in the ongoing J&DR Court proceedings involving the plaintiff's minor son and grandson. Thus, the defendants' abstention claim in this case is proper; the court should abstain from hearing the plaintiff's request for injunctive relief pending a final resolution of the state court proceedings and staying any damage claim determined to be viable. *See Deakins v. Monaghan*, 484 U.S. 193, 202 (1988) ("the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceedings").

### C. Applicability of the Rooker-Feldman Doctrine

Additionally, the plaintiff's complaint obvious related to family law matters being litigated in state court proceedings, which are not amenable to resolution in this court and about which the federal courts do not have the power to intervene. *Becker v. Liss*, 2012 U.S. Dist. LEXIS 48934, *5 (D. Md. Apr. 6, 2012) (citing Moore v. Sims, 442 U.S. 415, 435 (1979), and *Ankenbrandt v. Richards,* 505 U.S. 689, 701-705)). Therefore, under the Rooker-Feldman doctrine [5] federal courts do not have jurisdiction to overturn a state court judgment, even when the federal complaint raises allegations that the state court judgment violates a plaintiff's federal

---

[5] *See Rooker v. Fidelity Trust Co*., 263 U.S. 413, 415-16 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983).

Case 5:11-cv-00112-MFU-JGW   Document 39   Filed 04/13/12   Page 9 of 21   Pageid#: 309

statutory or constitutional rights, and it prevents the plaintiff from seeking, what is in essence, this court's appellate review of the state J&DR Court judgments. *Lanier v. Branch Banking & Trust Co.*, 2012 U.S. Dist. LEXIS 28919, *5-6 (D.S.C. Mar. 5, 2012).

"The Commonwealth of Virginia's interest in adjudicating . . . [claims] that arise in domestic relations cases is unusually strong, and the federal interest quite circumscribed and cabined." *York v. Virginia*, 2012 U.S. Dist. LEXIS 7421, *4 (W.D.Va. Jan. 23, 2012). "Comity requires 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways' [6]. . . , and [n]othing remotely suggests that the courts of the Commonwealth Virginia cannot adequately protect [the plaintiff's] constitutional rights in the proceedings pending there." *Id.*

### D. HRCSSD's Sovereign Immunity Plea

*Inter alia*, the Harrisonburg/Rockingham County Social Services Department assets that it is an arm of the Commonwealth of Virginia and, therefore, entitlement to sovereign immunity in this case under the Constitution's Eleventh Amendment. As Judge Moon recently observed in addressing a similar plea by the Albemarle County Board of Social Services ("ACBSS"), "The Eleventh Amendment reflects the common law concept of state sovereign immunity and * * * is not limited to states as such, but also applies to an agency that acts as an 'arm of the state.'" *Nelson v. Herrick*, 2011 U.S. Dist. LEXIS 123618, *24-25 (W.D. Va. Aug. 26, 2011) (citing

---

[6] *Middlesex Ethics Comm. v. Garden State Bar Assn*, 457 U.S. 423, 431 (1982) (quoting *Younger*, 401 U.S. at 44).

Case 5:11-cv-00112-MFU-JGW   Document 39   Filed 04/13/12   Page 10 of 21   Pageid#: 310

*Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974), and *Cash v. Granville County. Bd. of Educ.*, 242 F.3[d] 219 (4th Cir. 2001).

This immunity, however, does not apply in every instance and to every state agency or instrumentality; thus, the burden of proof is on HRCSSD to establish its entitlement to immunity in this case. *Nelson v. Herrick, supra* at *26 (citing *Christy v. Pa. Tpk. Comm'n*, 54 F.3[d] 1140, 1144 (3rd Cir. 1995); *Beardsley v. Webb*, 30 F.3[rd] 524, 531-32 (4th Cir. 1994); *ITSI T.V. Prods., Inc. v. Agric. Assns.*, 3 F.3[d] 1289, 1291 (9th Cir. 1993)). Consistent with Judge Moon's conclusion in *Nelson v. Herrick, supra* at 26-27, that the ACBSS met the "sovereign dignity" test for Eleventh Amendment immunity and consistent with Judge Jones' similar determination in *Doe v. Mullins*, 2010 U.S. Dist. LEXIS 74080, *4 (WDVa. July 22, 2010), that the Wise County (Virginia) Department of Social services was entitled to sovereign immunity, Virginia law requires HRCSSD to perform its child welfare services subject to the direction of the State Commissioner of Social Services and in accord with regulations adopted by the State Board of Social Services. § 63.2-319, Va. Code Ann. (1950, as amended). "This high degree of [state] control" and the "corresponding lack of [local department] autonomy," therefore, compel a finding in this case that at a minimum in its child protection role the HRCSSD acts as an arm of the state and its motion to dismiss is well-taken. *See Doe v. Mullins, supra* at*4 (citing *Perry v. Carter*, 1998 WL 1745365, at *8 (EDVa. July 27, 1998) ("Under Virginia law, the local [agencies] are clearly treated as an arm of the state which facilitates the implementation of the Commonwealth's policy protecting children from abuse and neglect.")).

## E.  Standard of Consideration -- Rule 12(b)(2) Motions

For purposes of the court's consideration of a Rule 12(b)(2) motion addressing the issue of personal jurisdiction, the court may consider facts presented beyond the allegations in the Complaint. *United States v. Maxwell*, 189 F. Supp. 2$^d$ 395, 398 (EDVa. 2002); s*ee also Wilson-Cook Medical, Inc. v. Wilson*, 942 F.2$^d$ 247, 252 (4th Cir. 1991).  In addition to the allegations in the Complaint, the court may consider any motion papers and any supporting legal memoranda, and absent an evidentiary hearing the burden is on the plaintiff to make a prima facie showing of a sufficient basis for jurisdiction. *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3$^d$56, 60 (4$^{th}$Cir. 1993); *see also New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3$^d$290, 294 (4$^{th}$Cir. 2005).  And in determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan, 2 F.3$^d$ at 60; *see also Dring v. Sullivan*, 423 F.Supp.2d 540, 543 (DMd. 2006).

## F.  Harrisonburg Police Dept. is Not a Suable Entity

On review the motion of the Harrisonburg Police Department ("HPD") seeking its dismissal on the grounds that it is not a separate suable entity is equally well-taken.  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  And where a party is neither an individual nor a corporation, that party's capacity to be sued must be

12

determined by the law of the state where the federal district court sits.  Rule 17(b)(3); *Avery v. Burke*, 660 F.2<sup>d</sup> 111, 113-114 (4th Cir. 1981); *Thompson v. City of Danville*, 2011 U.S. Dist. LEXIS 59698, at *13-14 (WDVa. June 3, 2011).

In the case now before the court, therefore, Virginia law controls the issue of the HPD's capacity to be sued in federal court.  And under Virginia law, "an operating division of a governmental entity cannot be sued unless the legislature has vested the operating division with the capacity to be sued."  *Guerrero v. Deane*, 2010 U.S. Dist. LEXIS 14468, at *51-52 (EDVa. Feb. 19, 2010) (holding that Price William County's police department could not be sued separately because it exists merely as "an arm of Prince William County"); *Mukuna v. Gibson*, 2011 U.S. Dist. LEXIS 95408, *15-16 (EDVa. August 25, 2011) (holding that the Metropolitan Washington Airport Authority Police Department could not be separately sued because it exists merely as an arm of the Metropolitan Washington Airport Authority); *Burnley v. Norwood*, 2010 U.S. Dist. LEXIS 78666, at *15-16 (EDVa. Aug. 4, 2010) (holding that the Richmond City Police Department could not be sued because it was not "vested with such a capacity" by the General Assembly and is merely a part of the City of Richmond).

Consistent with the holding in these cases, the Harrisonburg Police Department is not a "person" within the meaning of 42 U.S.C. § 1983.  It is not amenable to suit under that statute; the plaintiff's claim against it must fail, and it is entitled to be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.  *E.g., Revene v. Charles County Comm'rs*, 882 F.2<sup>d</sup> 870, 874 (4<sup>h</sup>Cir. 1989).

## G.  Standard of Consideration -- Rule 12(b)(6) Motions

For the purposes of Rule 12(b)(6) motions addressing the issue of whether a plaintiff has stated a cognizable cause of action, the Court must construe the plaintiff's complaint in the light most favorable to her and take her well-pleaded factual allegations as true. *Randall v. United States*, 30 F.3$^d$ 518, 522 (4th Cir. 1994), cert. denied, 514 U.S. 1107 (1995).  The court, however, is not bound by her legal conclusions.  *Id.*  Moreover, her "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, a claim that fails to allege "enough facts to state a claim to relief that is plausible on its face" should not survive a motion to dismiss filed pursuant to Rule 12(b)(6).  *Id.* at 570; *see also Hunt v. Mortgage Elec. Registration*, 522 F. Supp. 2$^d$ 749, 752 (D.S.C. 2007) (plaintiff's complaint held to be full of conclusory statements with insufficient factual allegations). Furthermore, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citation omitted).

## H.  No Plausible § 1983 Claim Stated Against Defendants Miller, Knott and Doe

Claiming a violation of her Fourth Amendment "right of privacy," the plaintiff seeks to assert a claim against the two police officers and Doe (an unnamed Child Protective Services worker) for their actions taken in connection with the emergency removal of the plaintiff's minor daughter's infant son from her residence [7] on the night of October 26-27, 2011.  To assert such a

---

[7]    As part of the defendants' argument that the plaintiff had no reasonable expectation of privacy, it is their contention that the residence was not owned by the plaintiff, was only her residence from time to time, and that the owner gave the police permission to enter.  Docket # 38, pp. 20-24.  For purposes of the court's consideration of all pending motions it is assumed that the removed child was in fact removed from the plaintiff's residence.

Fourth Amendment claim, the plaintiff must demonstrate a cognizable expectation of privacy in the particular place at the time of the relevant events. *See United States v. Saint-Brice*, 1 Fed Appx. 232, 233, 2001 U.S. App. LEXIS 596, *3 (4th Cir. Jan. 16, 2001); *Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000) ("The protections of the Fourth Amendment are triggered when an individual seeking refuge under the Fourth Amendment 'has a legitimate expectation of privacy in the invaded place' or the item seized.) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).

As these defendants argue, the emergency removal of the child was made pursuant to the authority of § 63.2-1517, Va. Code Ann. (1950, as amended). In pertinent part this Virginia statute provides that a "child protective service worker . . . or law enforcement official investigating a report or complaint of abuse and neglect may take a child into custody for up to 72 hours without prior approval of parents or guardians. . . ." Therefore, absent a showing by the plaintiff of some form of judicial deception the physical removal of the minor child was fully legal under Virginia law. *See Southerland v. City of New York*, 652 F.3d 209,231(2nd Cir. 2011) ("The removal of a child from his or her parent does not violate the parent's substantive due process rights if a post-removal judicial proceeding is promptly held to confirm that there exists a reasonable basis for the removal"). In short, under the facts of this case the plaintiff had no reasonable expectation of privacy.

## I.  No Plausible Claim Stated Against Savanick, Bowman and Jerlinski

As specified by the plaintiff during oral argument on the defendants' various motions, it is her contention that defendants Savanick and Bowman (both Child Protective Service

Case 5:11-cv-00112-MFU-JGW   Document 39   Filed 04/13/12   Page 15 of 21   Pageid#: 315

employees) gave "falsified information" to the J&DR Court by stating that the removed child was abused and neglected while in her care, and defendant Jerlinski (also a Child Protective Service employee) wrongfully kept her from attending the emergency removal hearing. (Docket # 38, pp. 8-11). [8]

With reference to the claim against Jerlinski, it must be noted at the outset that Virginia Law restricts significantly the persons, agencies and institutions that may access information related to proceedings involving juveniles, and a grandparent who is neither a parent nor a guardian of the removed minor child is not within one of the permitted classes. §§ 16.1-300 *et seq.* Va. Code Ann. (1950, as amended); *see also In re Richmond Newspapers, Inc.*, 14 Va. Cir. 227 (1988). Moreover, it also must be recognized that § 16.1-241(A)(3), Va. Code Ann (1950, as amended), grants jurisdiction to juvenile courts in all cases, matters and proceedings involving the "custody, visitation, support, control or disposition of a child . . . whose custody, visitation or support is a subject of controversy or requires determination," and the plaintiff makes no claim that she petitioned to intervene in this proceeding, only that she was denied access to the emergency removal haring.

Collectively, it is unclear from the plaintiff's pleadings and representations to the court whether she is alleging that these three caseworkers acted in both their official and individual capacities. To the extent she contends they acted in their official capacities, each is patently immune from the plaintiff's 1983 claims. *E.g., Davis v. Department of Soc. Servs.*, 1991 U.S.

_____

[8]    In her prolix and confusing pleadings the plaintiff additionally challenged Jerlinski's role in the J&DR Court's consideration of a pending HRCSSD petition pertaining to her son's foster care plan, and she possibly suggests this defendant's possible involvement in her false testimony allegations. Therefore, for purposes of the court's consideration of this defendant's motions to dismiss it is assumed that the plaintiff desires to continue to pursue this claim.

16

App. LEXIS 19081, *11 (4th Cir. Aug. 19, 1991) (citing *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989)). Moreover, under Virginia law the state's paramount interest in children's welfare "would be jeopardized if social workers had to weight their decision in terms of their personal liability. *Vosburg v. Department of Soc. Sevrs.*, 884 F.2[d] 133, 137 (4th Cir. 1989). Thus, each of these Child Protective Services employees is entitled to absolute immunity under the facts of this instant case. *Id.*; *accord Ernst v. Child & Youth Servs. of Chester County*, 108 F.3d 486, 495 (3d Cir. 1997). [9]

.

To the extent any one or more of these defendants is alleged to have acted in her individual capacity and is not absolutely immune under the Eleventh Amendment or by virtue of sovereign or prosecutorial immunity, it is nevertheless clear that all of the alleged harms committed by these defendants, about which the plaintiff complains, were the result of actions they performed during the course of their duties as Child Protective Service workers. Consequently, even if it is assumed *arguendo* that the plaintiff is asserting (and can ultimately prove) that any one or more of these defendants acted in her individual capacity in an investigative or administrative role, [10] that defendant is nevertheless entitled to qualified immunity. *See Kentucky v. Graham,* 473 U.S. 159, 166-167 1985) (absolute immunity and qualified immunity are defenses available to government officials sued in their individual capacities); *Weller v. Department of Soc. Servs.*, 901 F,2[d] 387, 398 (4th Cir. 1990) (qualified immunity shields government officials from liability for civil damages claims based on the

---

[9]  This immunity is based on the idea that the functions of child welfare workers are analogous to those performed by prosecutors, who were immune from suit at common law. *See Vosburg*, 884 F.2[d] at 137-138; *Ernst,* 108 F.3[d] at 93-94.

[10]  A state child welfare worker acting in an investigative or administrative capacity is entitled only to qualified immunity. *Vosburg*, 884 F.2[d] at 138.

performance of discretionary functions that "[do] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Nothing in the record or in the plaintiff's allegations suggests that any of these defendants violated any clearly recognized statutory or constitutional right in connection with their alleged actions related in any way to the emergency removal of the child from the residence, or related in any way to the emergency removal hearing, or in any way related to any subsequent proceeding involving the removed child. Moreover, unlike his parents the plaintiff (grandmother) has no liberty interest in the custody, care and management of the removed child. *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000). There is equally no liberty interest or right of the plaintiff to remain free of child abuse investigations. *Croft v. Westmoreland County Children and Youth Servs.*, 103 F.3[d] 1123, 1125 (3[d] Cir. 1997). And the record is totally devoid of any evidence from which a reasonable fact finder could conclude that any of these three defendants acted in bad faith.

Accordingly, the plaintiff has failed to state a cognizable cause action against the defendants Savanick, Bowman and Jerlinski, or any one of them, and their motions for summary judgment should be granted.

## J. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The plaintiff's 2nd Amended Complaint was properly received, properly deemed to be timely filed, and appropriately considered;

2. The *Younger* abstention principles are applicable in this case, and unless otherwise subject to dismissal the court should abstain from hearing the plaintiff's request for injunctive relief pending a final resolution of the state court proceedings and staying any damage claim determined to be viable;

3. Dismissal of the plaintiff's complaint is appropriate by application of the Rooker-Feldman doctrine;

4. Under Virginia law, the HRCSSD acts as an arm of the state in order to facilitate the implementation of the Commonwealth's policy protecting children from abuse and neglect;

5. The HRCSSD has appropriately invoked sovereign immunity and should be dismissed as a party defendant;

6. The HPD is not a "suable entity" under 42 U.S.C. § 1983 and should be dismissed as a party defendant;

7. The plaintiff has stated no plausible § 1983 claim against defendants Mill, Knott and Doe;

8. The participation, if any, of the defendants Miller, Knott and Doe in the emergency removal of the child was pursuant to the authority of § 63.2-1517, Va. Code Ann. (1950, as amended);

9. Neither the emergency removal of the child nor any action by any defendant connected to the emergency removal hearing violated any substantive due process right of the plaintiff;

10. The post-removal judicial proceeding in the J&DR Court was promptly held and confirmed the existence of a reasonable basis for the removal;

11. Defendants Savanick, Bowman and Jerlinski are entitled to absolute immunity on the basis of their prosecutorial role in the state court child protection proceedings;

12. The plaintiff has stated no plausible § 1983 claim against defendants Savanick, Bowman and Jerlinski;

13. Nothing in the plaintiff's pleadings or in the record suggests any violation on a clearly recognized federal statutory or constitutional right by any defendant in connection with the emergency child removal or the subsequent state court proceedings.

14. The plaintiff has no liberty interest in the custody, care and management of the removed child;

Case 5:11-cv-00112-MFU-JGW   Document 39   Filed 04/13/12   Page 19 of 21   Pageid#: 319

15. The plaintiff has no liberty interest or right to remain free of child abuse investigations; and

16. There is nothing in the record or pleadings, which would suggest to a reasonable fact finder that it could be concluded that any of the defendants acted in bad faith.

## K. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered granting SUMMARY JUDGMENT to all defendants and DISMISSING this case from the docket of the court pursuant to Rule 12(b), Federal Rules of Civil Procedure.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to the plaintiff and to all counsel of record.

## L. Notice to the Parties

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the

conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: this 13th day of April 2012.

s/ *James G. Welsh*

United States Magistrate Judge